# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JAY DRIESEN, RUSTIC HOME BUILDERS LLC,<br><br>        Plaintiffs,<br>vs.<br><br>MICHAEL J. SMITH; MARGARET A. SMITH; STEVEN G. HAUGAARD; CADWELL, SANFORD, DEIBERT & GARRY L.L.P.; STEPHEN C. LANDON; BRETT LOVRIEN, MICHAEL A. HENDERSON, JAMES S. SIMKO; PETER BENFORD; JIM LOUP; SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM; MOODY COUNTY CLERK, LILLIAN RELF, DEPUTY CLERK LISA JOHNSON; HONORABLE DAVID R. GIENAPP; HONORABLE TIM D. TUCKER; CHIEF JUSTICE DAVID GILBERTSON; JUSTICE JOHN K. KONENKAMP; JUSTICE STEVEN L. ZINTER; JUSTICE GLEN A. SEVERSON; JUSTICE LORI S. WILBUR; RUTH KOOIMA; MICHAEL J. JACOBSMA; JOHN M. MURRAY; IOWA JUDICIAL BRANCH; DON E. COURTNEY; HONORABLE JAMES D. SCOTT; HONORABLE JEFFREY L. POULSON; BRAD VAN HEUVELEN,<br><br>        Defendants. | No. C13-4037-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS**<br><br>_____ |

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND................................................................3
   A. *Factual Background* ...................................................................................*3*
      1. *The parties and principal actors*........................................................*3*
      2. *The South Dakota litigation*..............................................................*4*
      3. *The Iowa litigation*...........................................................................*5*
         a. *Driesen I*..................................................................................*5*
         b. *Driesen II*................................................................................*6*
         c. *Latest litigation* ......................................................................*7*
   B. *Procedural Background* .............................................................................*8*

II. LEGAL ANALYSIS .................................................................................................11
   A. *Standards For Rule 12(b)(1) Motions To Dismiss*..........................................11
   B. *Rooker-Feldman Doctrine* .............................................................................14

III. CONCLUSION .........................................................................................................19

"Large streams from little fountains flow, tall oaks from little acorns grow." David Everett (1791). Like the proverbial oak tree, this broad-based case grows out of two simple state court cases in Iowa and South Dakota. Having lost repeatedly in the state courts of Iowa and South Dakota, plaintiffs have transformed those straightforward cases, involving a discrete set of facts and a few individuals, into this case by which plaintiffs bring federal claims against nearly every individual, lawyer, and judge involved in the prior state litigation. Defendants have moved for dismissal of this case on multiple grounds, and plaintiffs have resisted those motions.

2

# I. INTRODUCTION AND BACKGROUND

## A. Factual Background

### 1. The parties and principal actors

Plaintiff Jay Driesen is an Iowa resident with a mail address in Inwood, Iowa. Driesen was the sole stockholder of plaintiff Rustic Home Builders, L.L.C. ("RHB"), which was dissolved on March 31, 2008.

Defendant Michael J. Smith is a resident of Flandreau, South Dakota. Defendant Margaret A. Smith is a resident of Colton, South Dakota. Michael and Margaret were previously married (collectively, "the Smiths").

Defendant Cadwell, Sanford, Deibert & Garry is a law firm with offices in Sioux Falls, South Dakota ("the Cadwell law firm"). The Cadwell law firm previously represented the Smiths. Defendants Stephen C. Landon, Brett Lovrien, Michael A. Henderson, and James S. Simko are attorneys at the Cadwell law firm.

Defendant Michael J. Jacobsma is an attorney in Sioux Center, Iowa, who represented the Smiths. Defendant John M. Murray is an attorney in Storm Lake, Iowa, who represented the Smiths. Defendant Steven Haugaard is an attorney in Sioux Falls, South Dakota, who represented Driesen and RHB. Defendant Peter Bendorf is also an attorney in Sioux Falls, South Dakota, who represented Driesen and RHB. Defendant Jim Loop has an office in Wilmot, South Dakota. Defendant Lillian Relf was Clerk of Court for the South Dakota Third Judicial Circuit, Moody County, in 2007. Defendant Lisa Johnson was the Deputy Clerk of Court for the South Dakota Third Circuit Court, Moody County, in 2007. Defendants Don E. Courtney, James D. Scott, and Jeffrey L. Poulson are Iowa District Court Judges in Iowa's Third Judicial District. Defendants David R. Gienapp and Tim D. Tucker are both Judges in the South Dakota Third Circuit Court, Moody County. Defendant David Gilbertson is Chief Justice of the South Dakota Supreme Court. Defendants John K. Konenkamp,

3

Steven L. Zinter, Glen A. Severson, and Lori S. Wilbur are Justices of the South Dakota Supreme Court. Defendant Ruth Kooima is Driesen's sister. Driesen, Ruth, and Merlyn Driesen are the children of Dorothy Driesen. Defendant Brad Van Heuvelen is a trust officer with the Peoples' Bank in Rock Valley, Iowa.

### 2. *The South Dakota litigation*

On January 10, 2006, the Smiths contracted with RHB to provide the Smiths with lumber products and services for building a home north of Flandreau, South Dakota. Disagreements between the parties arose and the Smiths sued RHB. On May 1, 2007, the Smiths obtained a default judgment against RHB for $174,963.01. Judge Tucker presided at the default judgment hearing. Although Driesen, RHB's manager, and Jared Driesen were also named in the Smith's lawsuit, the default judgment was obtained only against RHB. Both Driesen and RHB moved to set aside the default judgment. On June 12, 2007, the motion was denied.

In 2007, the default judgment against RHB was executed in Iowa. Almost five years later, in March 2012, the Smiths and RHB stipulated that the judgment had been partially satisfied "'based upon [the Smiths'] seizure of truckloads of logs from [Rustic].'" *Smith v. Rustic Home Builders, L.L.C.,* 826 N.W.2d 357, 358 (S.D. 2013). A partial satisfaction of judgment was entered for $45,377.52 by Judge Gienapp.

In April 2012, the trial court ordered that the "'claims against Jay Driesen which if proven would allow for the 'piercing of the corporate veil'" . . . may be dismissed without prejudice[.]'" *Id.* The order further stated that any other "'claims [against Jay Driesen], presently made or presented in the future, arising from the facts or circumstances which gave rise to this case, other than the previously entered [m]oney [j]udgment' were 'dismissed with prejudice.'" *Id.* RHB later unsuccessfully challenged the amount of the partial satisfaction of judgment, arguing that the entire judgment had been satisfied.

On October 25, 2012, Driesen, individually, and on behalf of RHB, appealed, inter alia, the May 1, 2007, default judgment; the June 12, 2007, order denying setting aside the default judgment; and the September 18, 2012, partial satisfaction of judgment order. The Smiths moved to dismiss the appeal on three grounds: (1) the appeal is untimely; (2) Driesen was not an attorney, and, therefore, could not represent RBH; and (3) Driesen was not an aggrieved party. *Id.* at 359. The South Dakota Supreme Court dismissed the appeal as to the 2007 orders, holding that the appeal was untimely as to those orders. *Id.* The court also dismissed RHB's appeal of the partial satisfaction of judgment order because Driesen, a non-lawyer, could not appear on behalf of RHB. *Id.* at 360. Finally, the court dismissed Driesen's appeal of the partial satisfaction of judgment order because he was not an aggrieved party. Id. Defendants Chief Justice Gilbertson and Justices Konenkamp, Zinter, Severson, and Wilbur were sitting on the South Dakota Supreme Court when the appeal was decided.

### 3. *The Iowa litigation*

#### a. *Driesen I*

On July 23, 2002, Dorothy created a trust, named the Dorothy Driesen Living Trust. The trust specified that the trust was revocable and named Dorothy as trustee, and if Dorothy became disabled, Driesen would serve as successor trustee. The distribution provision of the trust provided that Driesen and Merlyn would distribute all of Dorothy's personal effects, according to a note left in her bank deposit box, with Driesen receiving the Driesen family farm, he and Merlyn each receiving half of the funds in Dorothy's investment account and in her checking account, and the remainder of the trust assets going to Ruth.

On August 20, 2007, Ruth filed two petitions in Iowa District Court for Sioux County. She filed a petition seeking an involuntary guardianship for Dorothy, with Ruth as the proposed guardian. Ruth also filed a petition seeking to have Dorothy

5

removed as the trustee of her trust and replaced by an independent trustee. The district court appointed an attorney, Debra De Jong, to act as guardian ad litem/attorney for Dorothy in both of the proceedings.

On October 4, 2007, Dorothy executed an amendment to her trust naming the People's Bank of Rock Valley, Iowa ("the People's Bank"), as the trustee and changing the distribution provisions, leaving the "balance" of the trust assets to Ruth. On December 11, 2007, Driesen transferred the 150 acre "Driesen farm" from Dorothy's trust to Little Big Horn Investments, L.L.C., incorporated in Nevada. On January 10, 2008, Dorothy filed a petition in Iowa District Court in Lyon County seeking to quiet title in the farm land. On February 18, 2008, the district court consolidated the pending guardianship, trust, and the quiet title actions.

Trial was held on March 27, 2008, and the trial court filed its ruling on August 4, 2008. On the guardianship petition, the court appointed Ruth as guardian for Dorothy. On the trust action, the court found that Dorothy's trust was a valid revocable trust and that the trust's amendment was validly executed. The court further removed Driesen as trustee and appointed the People's Bank as trustee. On the quiet title action, the court found the quitclaim deed conveying the Driesen farmland to Little Big Horn Investments, L.L.C. null and void and quieted title to that property in the Dorothy Driesen Trust. Driesen appealed, but only the trial court's findings concerning the terms of Dorothy's trust. The Iowa Court of Appeals affirmed the decision of the district court. *See In re Guardianship of Driesen*, 771 N.W. 2d 652, 2009 WL 1491871, at *4 (Iowa Ct. App. May 29, 2009) (unpublished table decision) (Driesen I).

### b. *Driesen II*

In 2009, the People's Bank, as trustee, sued Driesen in Iowa District Court for Lyon County. The People's Bank requested the court to "'declare that any property

6

held in the name of Little Bighorn Investments, LLC is the lawful property of the Dorothy Driesen Trust and that People's Bank is the duly appointed manager of Little Bighorn Investments, LLC.'"[1] *People's Bank v. Driesen*, 807 N.W.2d 157, 2011 WL 3925449, at *2 (Iowa Ct. App. Sept. 8, 2011) (unpublished table decision) (Driesen II). The People's Bank also sought to recover funds Driesen had taken from the trust and damages. *Id.* The People's Bank argued Driesen improperly used trust funds to pay his personal legal fees and transferred trust funds to Little Big Horn Investments L.L.C. *Id.* at *2 n.2. The district court granted the People's Bank's motion for summary judgment. *Id.* at *3. Driesen appealed, and the Iowa Court of Appeals affirmed the district court's decision. *Id.* at *12.

    *c.*    *Latest litigation*

On March 16, 2011, Margaret Smith and the People's Bank, as trustee of Dorothy's trust, filed an amended petition against Driesen, Merlyn Driesen, and Yukon Investments, L.L.C. in Iowa District for Sioux County ("the Sioux County lawsuit"). In the Sioux County lawsuit, Smith and the People's Bank sought to enforce judgments entered in South Dakota and Lyon County, and requested that the court set aside an alleged fraudulent transfer that Driesen made to Merlyn Driesen of 60 acres of Sioux County farmland. On January 16, 2013, after reaching a settlement, Margaret Smith and the People's Bank dismissed the Sioux County lawsuit with prejudice.

On October 12, 2011, Margaret Smith filed a petition in equity against Driesen and Sanborn Two, L.L.C. ("Sanborn") in Iowa District Court for Lyon County. Smith sought to enforce the South Dakota judgment and set aside allegedly fraudulent transfers from RHB to Sanborn. Driesen is Sanborn's owner and manager. On

---

[1] There is some discrepancy in the record on the spelling of Little Big Horn Investments. It appears as both "Little Big Horn" Investments and "Little Bighorn" Investments. With the exception of quotations, I will refer to it as Little Big Horn Investments throughout this opinion.

September 12, 2013, defendant Judge Don E. Courtney held a bench trial. On October 26, 2012, Judge Courtney entered his written ruling, holding that: (1) the South Dakota judgment against RHB was a valid and enforceable foreign judgment which would be enforced in Lyon County, Iowa; (2) the transfers from RHB to Sanborn were fraudulent; (3) Smith was entitled to levy execution on the assets transferred from RHB to Sanborn; and (4) Driesen was personally liable for making the fraudulent transfers. *Smith v. Sanborn Two, L.L.C.,* No. EQCV500462, at *7 (Iowa Dist. Ct. Oct, 25, 2012).[2]

Plaintiffs allege that the Iowa and South Dakota courts have colluded to not correct errors in the default judgment proceeding and the subsequent litigation.

### B. *Procedural Background*

On April 30, 2013, plaintiffs Driesen and RHB filed their *pro se* Complaint against 28 named defendants, all of whom participated, as litigants, lawyers, law firms, judges, or court employees in state court cases involving plaintiffs.[3] Plaintiffs also name as defendants the "SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM" and the "IOWA JUDICIAL BRANCH." Compl. at 1. The Complaint contains the following claims: (1) civil rights violation claims under 42 U.S.C. §§ 1983 and 1985; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; (3) pendent state law claims for unjust enrichment and conspiracy to defraud. All of plaintiffs' claims are premised on the ground that default judgment entered in the South Dakota litigations was fraudulently obtained.

---

[2]This decision is attached to Margaret Smith's brief as Exhibit E.

[3]Plaintiffs' Complaint also names "OTHER POSSIBLE DEFENDANTS Unknown at This Time." Compl. at 1.

8

Defendants have all filed motions to dismiss on multiple grounds. Defendants Margaret A. Smith, Ruth Kooima, Michael J. Jacobsma, and Brad Van Heuvelen ("the Smith defendants") seek dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted (docket no. 7). They argue that this court lacks subject matter jurisdiction to hear plaintiffs' state law claims against them due to a lack of complete diversity of citizenship. The Smith defendants also argue that plaintiffs fail to state claims against them for civil rights violations under § 1983, § 1985, or RICO.

Defendants Judges Courtney, Scott, Poulson, and the Iowa Judicial Branch ("the Iowa Judiciary defendants") move to dismiss pursuant to Rule 12(b)(6) (docket no. 8). They argue that plaintiffs fail to state claims against them for civil rights violations under § 1983, § 1985, or RICO. Alternatively, they argue that they are entitled to judicial immunity and/or sovereign immunity.

Defendants Cadwell, Sanford Deibert & Garry L.L.P., Stephen C. Landon, Brett Lovrien, Michael A. Henderson, and James S. Simko ("the Cadwell defendants") seek dismissal pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) (docket no. 11). They argue that this court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Cadwell defendants further argue that the Complaint should be dismissed for insufficient service of process, pursuant to Rule 12(b)(5). They also contend that plaintiffs' claims are barred as a matter of law by issue and claim preclusion. They also argue that plaintiffs fail to state claims against them for civil rights violations under § 1983, § 1985, or RICO.

Defendants South Dakota Unified Judicial System, Moody County Clerk Relf, Deputy Clerk Johnson, Judges Gienapp and Tucker, Chief Justice Gilbertson, and

Justices Konenkamp, Zinter, Severson, and Wilbur ("the South Dakota Unified Judicial System defendants") move to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) (docket no. 20). They contend that the claims against them must be dismissed because this court lacks personal jurisdiction over them. They also argue that they are entitled to judicial immunity and/or sovereign immunity. The South Dakota Unified Judicial System defendants further argue that the Complaint must be dismissed under the *Rooker–Feldman* doctrine.

Defendant Michael J. Smith seeks dismissal, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted (docket no. 21). He contends that plaintiffs fail to state claims against him for civil rights violations under § 1983, § 1985, or RICO. Defendant Steven Haugaard requests dismissal pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) (docket no. 22). He contends that this court lacks subject matter jurisdiction to hear plaintiffs' state law claims against him due to a lack of complete diversity of citizenship. He further contends that claims against him must be dismissed because this court lacks personal jurisdiction over him. Defendant Haugaard further argues that venue in Iowa is improper. Finally, he argues that plaintiffs fail to state claims against him for civil rights violations under § 1983, § 1985, or RICO.

Defendant Peter Bendorf moves for dismissal on a number of grounds (docket no. 25). He contends that this court lacks personal jurisdiction over him. He also contends that Driesen is not an aggrieved party and lacks standing to bring a claim. He further argues that this court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine. He additionally asserts that plaintiffs fail to state claims against him for civil rights violations under § 1983, § 1985, or RICO.

Defendant John M. Murray seeks dismissal pursuant to Rules 12(b)(1) and 12(b)(6) (docket no. 35). He argues that this court lacks subject matter jurisdiction

under the *Rooker–Feldman* doctrine. He further contends that plaintiffs' claims are barred as a matter of law by issue and claim preclusion. He also asserts that plaintiffs fail to state claims against him for civil rights violations under § 1983, § 1985, or RICO.

Defendants Loup, Michael J. Smith, Henderson, Bendorf, Murray, and the South Dakota Unified Judicial System defendants each joined the Smith defendants and the Cadwell defendants' motions to dismiss. Defendant Haugaard joined all of the motions to dismiss filed by the other defendants. Plaintiffs filed timely *pro se* resistances to all of defendants' motions to dismiss.

## II. LEGAL ANALYSIS

While defendants each seek dismissal under a number of grounds, I begin with defendants' challenge to subject matter jurisdiction over Driesen's claims.

### A. Standards For Rule 12(b)(1) Motions To Dismiss

A motion attacking the court's subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion can either attack the complaint's claim of jurisdiction on its face or it can attack the factual basis for jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982). . . .
>
> If the [defendant] wants to make a factual attack on the jurisdictional allegations of the complaint, the court may

receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn* [ *v. United States* ], 918 F.2d [724,] 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).

*Id*.

In *Osborn v. United States*, 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals provided an exhaustive discussion of the procedures and requirements for determination of a Rule 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary. . . . [Citations omitted.]
>
> The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [ v. Tucker* ], 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed.2d 212 (1981) ]. It is "elementary," the Fourth Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id*. Jurisdictional issues, whether they involve questions of

12

> law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn*, 918 F.2d at 729.

The Court in *Osborn* found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). The court stated that:

> [I]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted); *see Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir.2003) ("A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6)."). A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will

> not preclude the trial court from evaluating for itself the
> merits of jurisdictional claims. Moreover, the plaintiff will
> have the burden of proof that jurisdiction does in fact exist.

*Osborn*, 918 F.2d at 730 (quoting *Mortensen*, 549 F.2d at 891); *see Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (noting that "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes."). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, "'any rational mode of inquiry will do.'" *Osborn*, 918 F.2d at 730 (quoting *Crawford,* 796 F.2d at 929).

> Once the evidence is submitted, the district court must
> decide the jurisdictional issue, not simply rule that there is
> or is not enough evidence to have a trial on the issue.
> [*Crawford*, 796 F.2d at 929.] The only exception is in
> instances when the jurisdictional issue is "so bound up with
> the merits that a full trial on the merits may be necessary to
> resolve the issue." *Id.*

*Id.* Here, I conclude that defendants have made a factual challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). However, no party has asked for an evidentiary hearing on the issue. Rather, defendants have provided me with copies of orders and decisions in the state court litigation involving Driesen and RHB.

### B. *Rooker-Feldman Doctrine*

Defendants assert that the *Rooker–Feldman* doctrine bars this court's subject matter jurisdiction. *See Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462. In *Rooker*, the plaintiff sought to overturn a state court decision which had been affirmed by the state's supreme court and then denied review by the United States Supreme Court.

14

Plaintiff then filed a complaint in federal district court alleging the state court decision rested on an unconstitutional state statute. The district court ruled it had no jurisdiction over the suit, and the Supreme Court affirmed:

> [N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.

*Rooker*, 263 U.S. 416 (citations omitted). In declaring the district court to be without jurisdiction, the Supreme Court noted the validity of the state court decision. The state circuit court had jurisdiction of the subject matter and the parties, it conducted a full hearing, and the judgment was responsive to the issues. *Id.* at 415.

The United States Supreme Court reaffirmed *Rooker* in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Feldman* decision concerned two lawyers who sought membership in the District of Columbia bar. The lawyers petitioned the District of Columbia Court of Appeals for a waiver of the bar admission rule which required applicants to have graduated from an accredited law school. The Court of Appeals, the functional equivalent of a state's highest court, denied their petitions. Plaintiffs then filed complaints in United States district court challenging the denial of their petitions and the constitutionality of the bar admission rule. The district court dismissed their complaints for lack of subject matter jurisdiction, asserting that to do otherwise would place it in the position of reviewing an order of a jurisdiction's highest court. *Id.* at 470. The district court explained that "'the admission and exclusion of attorneys by the members of the highest court of a state is the exercise of a judicial function which may be reviewed only by the United States Supreme Court.'" *Id.* at 473 (citation omitted).

The Supreme Court affirmed, noting that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Id*. at 482. "Therefore, to the extent that Hickey and Feldman sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints." *Id*. at 482. The Court stated, however, that the district court did have subject matter jurisdiction over plaintiffs' complaints "[t]o the extent that Hickey and Feldman mounted a general challenge to the constitutionality" of the D.C. bar admission rule. *Id*. at 482-83. Thus, the *Feldman* decision stands for the proposition that United States district courts may review a state court's nonjudicial action for constitutional error, but not a state court's judicial decision whether or not a constitutional error is alleged:

> United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*Id*. at 486.

More recently, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court cautioned: "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id*. at 283.

The Eighth Circuit Court of Appeals explained the *Rooker–Feldman* doctrine as follows:

16

The *Rooker–Feldman* doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 68 L. Ed. 362 (1923). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. *See* 28 U.S.C. § 1257; *Feldman*, 460 U.S. at 486, 103 S. Ct. 1303. Because the *Rooker–Feldman* rule is jurisdictional, it may be addressed for the first time on appeal and may be raised sua sponte. *See Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 137 (2d Cir.1997). We review questions of subject matter jurisdiction de novo. *See Charchenko v. City of Stillwater*, 47 F.3d 981, 982–83 (8th Cir.1995).

The *Rooker–Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. *See Feldman*, 460 U.S. at 482 n. 16, 103 S. Ct. 1303; *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir.1999); *Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997). A general federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L. Ed.2d 1 (1987) (Marshall, J., concurring). In such cases, "where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id*. The state

> and federal claims need not be identical. *See In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir.1996).

*Lemonds v. St. Louis County*, 222 F.3d 488, 492–93 (8th Cir. 2000); *see Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005) ("The basis for the *Rooker–Feldman* doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and, by statute, they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257."); *see also Edwards v. City of Jonesboro*, 645 F.3d 1014, 1017 (8th Cir. 2011); *Dodson v. University of Ark. for Med. Sciences*, 601 F.3d 750, 754 (8th Cir. 2010); *Prince v. Arkansas Bd. Exam'rs in Psychol.*, 380 F.3d 337, 340 (8th Cir. 2004).

Here, plaintiffs' Complaint is nothing more than a collective appeal of the South Dakota default judgment decision, *Driesen I,* and *Driesen II*, masquerading as federal constitutional civil rights and RICO claims. For example, each "cause of action" in the Complaint challenges the legality of the default judgment obtained against RHB. *See* Complaint at ¶¶ 28, 30, 31, 35-37, and 39. The Complaint also contains challenges to the amount and effect of the partial satisfaction of judgment. *See* Complaint at ¶¶ 29, 30-32, 35, and 36-37. Plaintiffs contend that *Rooker-Feldman* is inapplicable because "[t]hrough collusion, the Iowa and South Dakota courts have completely ignored and neglected to rule on the error of the fraudulent Default (*money*) Judgment which facilitated the eventual unjust enrichment of Margaret A. Smith within interstate commerce." Plaintiffs' Resistance at 11. However, if plaintiffs believed that the judges in those decisions deprived them of constitutional rights, plaintiffs should have pursued their appeals to the United States Supreme Court. If plaintiffs were to prevail in this case, it would necessarily entail a ruling that the Iowa and South Dakota state courts wrongly decided the issues before them in those state court cases. Under these

circumstances, plaintiffs' claims are "inexorably intertwined" with the decisions of the Iowa and South Dakota state courts. Accordingly, under the *Rooker–Feldman* doctrine, this court lacks subject matter jurisdiction to consider plaintiffs' claims. Therefore, defendants' motions to dismiss are granted.

## III. CONCLUSION

For the reasons discussed, I find that under the *Rooker–Feldman* doctrine, this court lacks subject matter jurisdiction to consider plaintiffs' claims. Therefore, defendants' motions to dismiss are granted and this case is dismissed in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

**DATED** this 2nd day of January, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA